# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Leugim Acosta-Cruz,<br><br>Defendant. | Case No. 0:11-cr-002(4) (SRN/FLN)<br><br>**MEMORANDUM OPINION AND ORDER** |

James S. Alexander, Andrew S. Dunne, & Jeffrey S. Paulsen, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff.

Leugim Acosta-Cruz, 15591-041, Federal Correctional Complex-Allenwood Low, P.O. Box 1000, White Deer, Pennsylvania 17887, pro se.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Leguim Acosta-Cruz's Pro Se Motion Requesting Judicial Recommendation for a 12-Month Placement in a Residential Re-entry Center ("RRC") Pursuant to 18 U.S.C. § 3621(b)(4) ("Def's Mot."). [Doc. No. 215]. For the reasons set forth below, the Court denies Defendant's motion.

## I.     Factual and Procedural Background

On September 14, 2011, Acosta-Cruz was sentenced to a total term of 120 months imprisonment and four years supervised release. (Sentencing J. [Doc. No. 185].) His sentence consisted of 60 months for methamphetamine distribution and a consecutive 60 months for possession of a firearm in furtherance of a drug trafficking crime. (*Id.*) Acosta-Cruz's projected release date is December 21, 2020—more than two years from now.

1

(Opp'n of the United States to Def.'s Motion for Judicial Recommendation of RRC Placement ("Gov's Opp'n Mot.") [Doc. No. 217] at Attach. A.)

Now, seven years into his sentence, Acosta-Cruz moves this Court to issue a judicial recommendation to the Federal Bureau of Prisons ("BOP") that he be allowed to serve the last 12 months of his term in an RRC pursuant to 18 U.S.C. § 3621(b)(4). (Def's Mot. at 1.) Acosta-Cruz makes both a legal and policy argument to support his position.

First, he argues that the Second Chance Act of 2007 allows him to be placed in a pre-release RRC for the maximum amount of time statutorily allowed. (*Id.* at 2.) The Second Chance Act of 2007 increased the maximum amount of time permitted for pre-release RRC placement to 12 months and requires the BOP to make an individual determination of each inmate to ensure that their placement be "of sufficient duration to provide the greatest likelihood of a successful re-integration into the community." (*Id.* at 2 (citing 18 U.S.C.A. § 3624(c)(6)(c)).)[1]

Second, Acosta-Cruz contends that the research regarding re-entry indicates that inmates who do not receive proper time in an RRC prior to their release are more likely to reoffend upon reentering society. (*Id.* at 1–2.) Specifically, he claims that transition to

---

[1] Acosta-Cruz also asserts that his educational and vocational accomplishments support a 12-month RRC placement. Under 42 USC § 17541(a)(1)(g), the BOP is required to "provide incentives for prisoner participation in skills development programs." Moreover, according to 42 USC § 17541(a)(2)(a), a skill development program may incentivize "the maximum allowable period in a community confinement facility." Acosta-Cruz presents his BOP educational transcript to support his claim that he should receive the maximum allowable 12-month RRC placement. (Def's Mot. at Ex. 1.)

an RRC would help him find employment and housing, save money, and re-integrate with his loved ones before his release. (*Id*. at 4.)

The Government opposes Acosta-Cruz's motion on four grounds: (1) Acosta-Cruz's petition for habeas corpus relief is not ripe for judicial review; (2) Acosta-Cruz failed to exhaust his administrative remedies; (3) the BOP will comply with its duty under the Second Chance Act to review Acosta-Cruz for pre-release RRC placement; and (4) Acosta-Cruz does not have a constitutional right to a 12-month pre-release RRC placement. (Gov's Opp'n Mot. at 4–8.)

## II. Discussion

### A. Ripeness of Defendant's Claim

First, the Government argues that Acosta-Cruz's petition for writ of habeas corpus is premature and not ripe for judicial review. Acosta-Cruz's projected release date is about 25 months away, in December of 2020. (Gov's Opp'n Mot. at 5.) However, determinations on RRC placement are typically not made until 17–19 months prior to an inmate's projected release date. (*Id.*) Thus far, the BOP Unit Team for Acosta-Cruz has not made a final recommendation to the BOP Warden with respect to his pre-release RRC placement. (*Id.*) Because his pre-release RRC placement has not been finalized yet, the Government argues Acosta-Cruz's petition should be dismissed as premature. (*Id.* at 4–5.) As Acosta-Cruz's petition requires further factual development, it is not fit for judicial review. (*Id.* at 5.) Moreover, the Government contends that because his projected release date is in the future, Acosta-Cruz's injury is merely speculative since any alleged injury would not begin to accrue until December 21, 2019. (*Id.*)

Courts should refrain from "entangling themselves in abstract disagreements . . . through avoidance of premature adjudication." *Pub. Water Supply Dist. No. 10 of Cass Cty., Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003) (citation omitted). To determine ripeness, a court must examine both the "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pub. Water Supply Dist. No. 10 of Cass Cty*., 345 F.3d at 572–73 (citation omitted). First, a claim is not fit for judicial review if it would "benefit from further factual development." *Id*. at 573. A case is more likely to be considered ripe if it "poses a purely legal question and is not contingent on future possibilities." *Id*. at 573. Second, to prove hardship, "[t]he plaintiff[] need not wait until the threatened injury occurs, but the injury must be 'certainly impending.'" *Id*. (citation omitted). Here, Acosta-Cruz's claim is not ripe for judicial review. Because Acosta-Cruz has not been reviewed for pre-release RRC placement yet, his petition is premature. Acosta-Cruz's petition is not ripe because it is both "contingent on future possibilities" and the injury is not "certainly impending." *Id*. Instead, Acosta-Cruz's injury is merely speculative at this juncture.

B. **Exhaustion of Administrative Remedies**

Second, the Government argues that Acosta-Cruz has failed to exhaust his administrative remedies. (Gov's Opp'n Mot. at 6.) The Government contends that "unless and until Acosta-Cruz[,] (1) receives an adverse decision from the agency regarding any request he may make for the RRC placement, and (2) exhausts his administrative

4

remedies with regard to any such adverse decision, he may not challenge that decision in court." (*Id.*)

Exhaustion of administrative remedies is required before an inmate may file a petition for writ of habeas corpus under 28 U.S.C. § 2241. *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000) (per curiam). The exhaustion requirement may only be waived if it is demonstrated that proceeding through the administrative process would be futile. *See Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004).

In order for a prisoner to exhaust his administrative remedies regarding a denial of pre-release RRC placement, he must take four steps: (1) attempt informal resolution with a staff member, (2) submit an Administrative Remedy Request to the BOP Warden, (3) appeal to the Regional Director of the BOP, and (4) appeal again to the BOP General Counsel's Office. 28 C.F.R. §§ 542.14–542.15.

But Acosta-Cruz has failed to exhaust his administrative remedies. Because Acosta-Cruz has not received a decision regarding his pre-release RRC placement, he has unquestionably not begun his administrative appeal process. Moreover, Acosta-Cruz has presented no evidence that such a process would be futile.

### C. BOP's Duty to Review Pre-Release Placement and the Second Chance Act

Third, the Government argues that the BOP intends to comply with its duty to review Acosta-Cruz for pre-release RRC placement, but that even if the BOP were to deny RRC placement, the Second Chance Act would not necessarily be violated. (Gov's Opp'n Mot. at 7.) The BOP enjoys wide discretion to designate the place of a prisoner's imprisonment, but it must consider the following factors in doing so:

> (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence: (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (b) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the U.S. Sentencing Commission.

18 U.S.C. § 3621(b). Under the Second Chance Act, the BOP is obliged to guarantee that an inmate spends a share of the final months of his term "under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the [re-entry] of that prisoner into the community." Pub. L. No. 110–199, § 251 (citing 18 U.S.C. § 3624(c)(1)).

However, a prisoner does not have an enforceable legal right to a 12-month pre-release RRC placement. *O'Hara v. Rios*, 08-CV-5160 (JRT/JJK), 2009 WL 3164724, at *2 (D. Minn. Sept. 28, 2009) (citing *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004). "Rather, federal law simply requires that the BOP make an individualized determination of the appropriate RRC period, with attention to the specific factors listed in 18 U.S.C. § 3521(b)." *O'Hara*, 2009 WL 3164724, at *2. And while courts may offer recommendations as to where and when a placement should take place, the BOP is not bound by such recommendations. 18 U.S.C. § 3621(b).

In this case, Acosta-Cruz has failed to assert a violation of the Second Chance Act. Because Acosta-Cruz has not received a decision regarding his pre-release RRC placement, he cannot claim that the BOP improperly considered the various factors for pre-release RRC placement. And even if the BOP does eventually deny Acosta-Cruz pre-

release RRC placement, that decision does not necessarily violate the Second Chance Act.

### D. Constitutional Right to RRC Placement

Finally, the Government argues that Acosta-Cruz does not have a constitutional right to a 12-month pre-release RRC placement. (Gov's Opp'n Mot. at 9.) In addition, the Government asserts that any judicial review of a denial of Acosta-Cruz's request is limited to whether the agency's decision was procedurally sound, not the underlying merits. (*Id.*) The Supreme Court has ruled that federal inmates do not possess an inherent due process right to remain in or be transferred to any particular prison. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Thus, Acosta-Cruz has failed to assert a constitutionally protected liberty interest as inmates do not have a constitutional right to pre-release RRC placement.

## III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Acosta-Cruz's Motion Requesting Judicial Recommendation for a 12-Month Placement in a Residential Re-entry Center Pursuant to 18 U.S.C. § 3621(b)(4) [Docket No. 215] is **DENIED**.

Dated: November 6, 2018      s/Susan Richard Nelson
                             SUSAN RICHARD NELSON
                             United States District Judge